UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

DONALD ZANONE

Plaintiff,

v.

AMERICAN CRAFT COUNCIL

Defendant.

------------------------------------------------------------------------x

05 CV 6869  (JGK)(THK)

ELECTRONICALLY FILED
ECF Case

**DEFENDANT'S
STATEMENT OF
MATERIAL FACTS
PURSUANT TO LOCAL
RULE 56.1**

Pursuant to Rule 56.1 of the United States District Court for the Southern District of New York Local Civil Rules, defendant, AMERICAN CRAFT COUNCIL, by its attorneys, Hoey King, Toker, and Epstein, submits the following statement of material facts as to which it contends there is no genuine issue to be tried:

1. Defendant AMERICAN CRAFT COUNCIL ("ACC") is a not for profit educational organization dedicated to promoting understanding and appreciation of contemporary American craft.[1]  See Affidavit of Carmine Branagan, paragraph 3; See Exhibit "K", page ("p.") 38.

2.  Membership in ACC is open to the public and ACC derives income from annual membership fees. See Affidavit of Carmine Branagan, paragraph 4.

---

[1] Exhibits "A" through "N" identified in this document are attached to the accompanying Declaration of Glen H. Parker, Esq.  Exhibits "O" through "S" are attached to the accompanying Affidavit of Carmine Branagan.

1

3. ACC's operations are divided into separate departments, which include the Magazine, Finance, Shows, Development, Education and Library departments. See Affidavit of Carmine Branagan, paragraph 4.

4. Members of ACC receive free admission to the ACC sponsored craft shows. The Shows' department organizes craft shows across the country where exhibitors showcase their work. See Affidavit of Carmine Branagan, paragraph 5.

5. During her employment interview with ACC Board of Trustees, Carmine Branagan learned that ACC desired an "agent for change" to revamp the organization. See Exhibit "K", p. 30-31; See Affidavit of Carmine Branagan, paragraph 6.

6. In March 2002, ACC employed 30 persons. See Affidavit of Carmine Branagan, paragraph 7.

7. After her hire in March 2002 as Executive Director, Carmine Branagan orchestrated a restructuring of ACC's operations that included the elimination of job positions, the creation of new positions, and the termination of staff members. See Affidavit of Carmine Branagan, paragraph 8.

8. Until 2004, ACC's Shows operations were performed by employees based in a Highland, New York office location in Ulster County. Carmine Branagan decided to move the entire Shows operation to the Manhattan location. The Highland, New York office was closed and ACC sold the building. See Affidavit of Carmine Branagan, paragraph 9.

9. By May 2004, ACC reduced the number of employees to 22 – a 27% reduction in staff in two years. See Affidavit of Carmine Branagan, paragraph 10.

10. ACC's magazine department is responsible for the publication of a bimonthly magazine entitled *American Craft*. See Affidavit of Carmine Branagan, paragraph 11; and See

Exhibit "J", p. 22.  The *American Craft* magazine is devoted to contemporary craft. See Affidavit of Carmine Branagan, paragraph 11.

11.  The ACC employees who work in the magazine department are only responsible for the magazine and do not work in the other ACC departments. See Exhibit "J", p. 33.; and See Affidavit of Carmine Branagan, paragraph 12.

11.  Members of the ACC receive the *American Craft* magazine as a benefit of their membership. See Affidavit of Carmine Branagan, paragraph 13.

12.  The *American Craft* magazine is also sold on newsstands across the country. See Affidavit of Carmine Branagan, paragraph 14.

13.  Members of the ACC compose the bulk of the circulation of the *American Craft* magazine.  Therefore, ACC sometimes refers to circulation and membership interchangeably as in "Circulation/Membership". See Affidavit of Carmine Branagan, paragraph 15.

14.  Since March 2002, Circulation/Membership has generated more revenue than advertising sales.  Promoting and maintaining Circulation/Membership is the business of obtaining new members and retaining current members.  See Affidavit of Carmine Branagan, paragraphs 16 & 18.

15.  Carmine Branagan did not believe the organizational structure in place to manage Circulation/Membership was either appropriate or effective. See Affidavit of Carmine Branagan, paragraph 20.

16.  Shortly after becoming the Executive Director of ACC, Carmine Branagan learned that Lois Moran was both the Editor and Publisher of the *American Craft* magazine.  Carmine Branagan decided that a Publisher position needed to be created and separated from the Editor position. See Exhibit "K", p. 52-56; and See Affidavit of Carmine Branagan, paragraphs 20 &

22.

17. Carmine Branagan was concerned over having one employee handling both the editor and publisher functions and Ms. Branagan believed that such a position was "unusual" and not "standard practice in the industry." See Exhibit "K", p. 53; and See Affidavit of Carmine Branagan, paragraph 20.

18. Carmine Branagan believed that the established industry standard is to separate these roles because of the need to balance editorial decisions against the desire to increase revenue and reduce expenses. See Affidavit of Carmine Branagan, paragraph 20.

19. Another concern for Carmine Branagan was that she felt that ACC did not have employees professionally managing Circulation/Membership, newsstand sales, and list rental (renting the ACC's membership list to marketing companies). See Affidavit of Carmine Branagan, paragraph 21.

20. Before April 2004, the *American Craft* magazine's publishing tasks were performed by Lois Moran, Michael McKay and consultants. See Exhibit "K", p. 92.

21. Michael McKay is the Director of Finance and Administration for ACC.  See Exhibit "M", p. 10.

22. Before ACC hired John Gourlay as Publisher in April 2004, Michael McKay handled some aspects of circulation for the *American Craft* magazine. See Exhibit "M", p. 10-12.

23. Before ACC hired John Gourlay as Publisher in April 2004, Michael McKay utilized an independent contractor/consultant to assist him with his *American Craft* magazine circulation duties. See Exhibit "M", p. 11-12 and p. 94-98.

24. Before ACC hired John Gourlay as Publisher in April 2004, Lois Moran and Michael McKay handled aspects of circulation/membership, promotion, and fulfillment for the *American*

*Craft* magazine. See Exhibit "L", p. 145; and See Exhibit "J", p. 21.

25.  Before ACC hired John Gourlay as Publisher in April 2004, Lois Moran also utilized an  outside consultant named Paul Goldberg to handle some magazine circulation duties. See Exhibit "L", p. 145.

26.  Before ACC hired John Gourlay as Publisher in April 2004, Lois Moran believed that the way ACC was handling publishing was "rather unorthodox". See Exhibit "L", p. 145, line 4.

27.  Michael McKay admits that he is not a professional circulation person and that he does not believe he and Lois Moran performed their circulation work well. See Exhibit "M", p. 19, 51-52, and p. 89-92.

28.  Carmine Branagan believed that Lois Moran and Michael McKay were not professionals with the experience, sufficient time or even the desire to manage Circulation/Membership, newsstand sales, and list rental for the *American Craft* magazine. See Affidavit of Carmine Branagan, paragraph 21.

29.  Carmine Branagan wanted to have experienced professionals serving in both the Editor and Publisher roles. See Affidavit of Carmine Branagan, paragraph 22.

30.  Carmine Branagan decided that ACC needed to separate the Editor and Publisher roles and follow industry standards by hiring an experienced Publisher and allowing the Editor (Lois Moran) to fully attend to editing the magazine.  See Affidavit of Carmine Branagan, paragraph 22.

31.  Carmine Branagan made the decision to create a new position of Publisher and hire an experienced, professional Publisher to handle the revenue generating side of the *American*

*Craft* magazine including Circulation/Membership, newsstand sales, advertising sales and list rental, as well as carefully manage expenses.  See Affidavit of Carmine Branagan, paragraph 23.

32.  Carmine Branagan believed that the creation of the Publisher position would greatly improve the effectiveness of managing the *American Craft* magazine and generate more revenue for ACC. See Affidavit of Carmine Branagan, paragraph 24.

33.  Because the Publisher would be assuming the advertising sales responsibilities, ACC eliminated plaintiff's stand alone position of Advertising Manager and terminated plaintiff's employment as part of this comprehensive reorganization.  See Affidavit of Carmine Branagan, paragraph 23.

34.  In 1992, the advertising salesperson for the *American Craft* magazine retired and ACC began a search for a new advertising salesperson. See Exhibit "L", p. 35.

35.  Plaintiff, Donald Zanone, wrote a cover letter to the ACC stating that he was interested in the advertising sales position and that he had "fifteen years of advertising sales experience."  See Exhibit "E"; and See Exhibit "J", p. 9-15.

36.  Plaintiff's submitted a Resume to ACC, which stated that he sought a 'sales' position and that his prior experience was in sales. See Exhibit "E"; and See Exhibit "J", p. 9-15.

37.  In November 1992, ACC hired plaintiff, Donald Zanone, to sell advertising for the *American Craft* magazine. See Exhibit "L", p. 39, See Exhibit "J", p. 10.

38.  Donald Zanone had sold real estate immediately before ACC hired him. See Exhibit "E"; and See Exhibit "J", p. 15.

39.  During his employment, Mr. Zanone's major job duties were to sell advertisements for the *American Craft* magazine; bring in the advertising material by a certain date; and provide

a list of advertisement fees to ACC's business office. See Exhibit "L", p. 48-49; See Exhibit "J",

p. 17;  and See Exhibit "E".

40.  Lois Moran supervised Donald Zanone during his entire employment at ACC. See

Exhibit "L", p. 53-54; See Exhibit "A", paragraph 9; and See Exhibit "J", p. 20.

41.  When Lois Moran hired Donald Zanone, she did not believe he could or would help

her in areas other than selling advertising. See Exhibit "L", p. 40-41.

42.  From 1992 until April 2004, Lois Moran was the Editor and Publisher of the

*American Craft* magazine. See Exhibit "J", p. 21; See Exhibit "L", p. 22-23.

43.  Lois Moran was born on October 26, 1933 and she is over ten years older than

Donald Zanone.  See Exhibit "L", p. 5; and See Exhibit "J", p. 6.

44.  Donald Zanone was born on November 22, 1943. See Exhibit "J", p. 6.  Carmine

Branagan was born on May 6, 1948 and is less than five years younger than plaintiff. See

Affidavit of Carmine Branagan, paragraph 2.

45.  Carmine Branagan arrived at ACC with over fourteen (14) years of prior experience

in magazine publishing and advertising sales. See Exhibit "F"; and See Affidavit of Carmine

Branagan, paragraph 30.

46.  Carmine Branagan began her career in Advertising Sales for the Smithsonian,

Audubon and Ms. magazines. See Exhibit "F".  The National Audubon Society publishes

*Audubon* magazine. *Id*.

47.  From 1978 to 1982, Ms. Branagan served as the Advertising Director for the

National Audubon Society. *Id*.

48.  Carmine Branagan was the Vice President of Publishing for the National Audubon

Society from 1982 to 1988.  *Id*. In 1988, Carmine Branagan was promoted to Senior Vice

President of Publishing for the National Audubon Society and served in that position until 1992. *Id*.

49.  While serving as the Senior Vice President of Publishing for the National Audubon Society, Carmine Branagan supervised and worked with an employee named John Gourlay.  See Exhibit "K", p. 187-189; and See Affidavit of Carmine Branagan, paragraph 31.

50.  Later on in 2004, Ms. Branagan recruited and hired John Gourlay to assume the newly created position of Publisher for *American Craft* magazine. See Affidavit of Carmine Branagan, paragraphs 37 & 41.

51.  When Carmine Branagan started working for ACC in March 2002, six employees worked on the *American Craft* magazine and below is a list containing the names, ages, dates of birth, and job titles of the magazine employees in March 2002:

| Name | Age | Date of Birth | Title |
|------|-----|---------------|-------|
| 1. Lois Moran | 68 | 10/26/33 | Editor and Publisher |
| 2. Patricia Dandignac | 64 | 03/02/38 | Managing Editor |
| 3. Beverly Sanders | 62 | 10/29/39 | Senior Associate Editor |
| *4. Donald Zanone* | *58* | *11/22/43* | *Advertising Manager* |
| 5. Christine Kaminsky | 54 | 07/30/47 | Editorial Assistant |
| 6. Georgina Keenan | 31 | 02/16/71 | Associate Editor |

See Affidavit of Carmine Branagan, paragraph 25; and See Exhibit "J", p. 26-28.

52.  The first magazine department employee to be terminated after Ms. Branagan began employment was the youngest magazine employee (Georgina Keenan) who was terminated in July 2003 when she was 32 years of age. See Exhibit "J", p. 34; and See Affidavit of Carmine

Branagan, paragraph 26.

53.  ACC did not hire anyone to replace Georgina Keenan and the Associate Editor position has not been filled. See Affidavit of Carmine Branagan, paragraph 27.

54.  Plaintiff was the next magazine department employee to be terminated by ACC and his position of Advertising Manager was eliminated. See Affidavit of Carmine Branagan, paragraph 28.

55.  After ACC terminated Mr. Zanone on April 28, 2004, five employees worked on the *American Craft* magazine and below is a list containing the names, ages, dates of birth, and job titles of the magazine employees in May 2004:

| Name | Age | Date of Birth | Title |
|------|-----|---------------|-------|
| 1. Lois Moran | 70 | 10/26/33 | Editor in Chief |
| 2. Patricia Dandignac | 66 | 03/02/38 | Managing Editor |
| 3. Beverly Sanders | 64 | 10/29/39 | Senior Associate Editor |
| 4. Christine Kaminsky | 56 | 07/30/47 | Editorial Associate |
| 5. John Gourlay | 50 | 02/15/54 | Publisher |

See Affidavit of Carmine Branagan, paragraph 29; and See Exhibit "J", p. 36.


56.  Carmine Branagan attended many ACC staff meetings to discuss publishing issues. See Exhibit "K", p. 92, 81-82, and 168.

57.  ACC employees Lois Moran and Michael McKay and consultant Paul Goldberg attended meetings with Carmine Branagan to discuss publishing issues for the *American Craft* magazine. *Id*.

58.  Plaintiff, Donald Zanone, did not attend and was not present during the ACC

9

meetings with Carmine Branagan to discuss publishing issues for the *American Craft* magazine. *Id.*; and See Exhibit "J", p. 24-25.

59. Plaintiff's name was not mentioned by any of the persons attending the ACC staff meetings with Carmine Branagan where they discussed publishing for the *American Craft* magazine. See Exhibit "K", p. 171-174, 81-82, 92 and 168.

60. Plaintiff, Donald Zanone, did not have any oral or written communications with Carmine Branagan about publishing. *Id.*; and See Exhibit "J", p. 24-25.

61. Donald Zanone's supervisor never told Carmine Branagan that Mr. Zanone made any contributions to the magazine's publishing. See Exhibit "K", p. 80-82 and p. 171-174.

62. Plaintiff's supervisor, Lois Moran, never recommended to Carmine Branagan that Donald Zanone be considered for the Publisher position. See Exhibit "K", p. 178.

63. In late 2002 or early 2003, Ms. Branagan spoke to Lois Moran about her belief that that a Publisher position needed to be created and separated from the Editor position. See Exhibit "K", p. 54-55.

64. Carmine Branagan also expressed her desire to separate the Publisher and Editor functions to Michael McKay and discussed with him how the Publisher position would assume the advertising sales position. See Exhibit "K", p. 55-56; and See Exhibit "M", p. 89-92.

65. Carmine Branagan discussed with Michael McKay that ACC wanted someone "who could be responsible for the whole circulation ball of wax." See Exhibit "M", p. 18.

66. In her October 9, 2003 Executive Director's Report, Carmine Branagan set out the goals for Fiscal Year 2004. See Exhibit "Q", document bate stamped 1330. The second item on the 2004 goal list was Publishing and specifically listed a number of objectives including "Evaluate advertising sales." *Id.*

67.  The minutes from the October 18, 2003 Board of Trustees' meeting has a "Publishing" section stating that "this year we are evaluating publishing … and bringing in a publishing expert."  See Exhibit "Q", document bate stamped 1333.

68.  In her November 2003 calendar book, Carmine Branagan wrote notes to herself in which she outlined how she intended on dividing the magazine duties with a Publisher in charge of circulation and advertising sales and a different employee in charge of editorial. See Exhibit "G"; and See Exhibit "K", p. 99-102.

69.  In or around December 2003, Carmine Branagan learned from Bob Cohen, a publishing friend, that John Gourlay was looking for employment as a Publisher.  See Exhibit "K", p. 185 and 191-192.

70.  In December 2003, John Gourlay had prior and recent experience as a Publisher. See Exhibit "D".

71.  John Gourlay was the Publisher of Stereophile magazine from 1998 to 2003. *Id.*

72.  As of April 2004, Donald Zanone had never held the title of Publisher for a magazine. See Exhibit "J", p. 15.

73.  John Gourlay's Resume states that he is an "experienced, results-oriented consumer magazine publisher." See Exhibit "D".

74.  Mr. Gourlay had previously worked with Carmine Branagan at the National Audubon Society.  See Exhibit "K", p. 187-189.

75.  Carmine Branagan had supervised John Gourlay's work when she worked as a Senior Vice President of Publishing for the National Audubon Society.  *Id.*

76.  On January 5, 2004, Bob Cohen sent an email to Carmine Branagan with John Gourlay's phone number (212-724-0887) so that she could contact him about being the Publisher

11

for the *American Craft* magazine.  See Exhibit "G", document bate stamped 1203; and See
Exhibit "K", p. 197-198.

     77.  On January 9, 2004, Carmine Branagan made a telephone call to John Gourlay and
spoke with him for 15.5 minutes, which is reflected on ACC's Phone Bill summary.   See Exhibit
"O", 2nd page.

     78.  During their telephone conversation, Carmine Branagan told John Gourlay that she
was interested in hiring a Publisher and explained the *American Craft* magazine and ACC to
him. See Exhibit "K", p. 197-198.

     79.  John Gourlay advised Ms. Branagan that he was interested in the Publisher position
with ACC. *Id.*

     80.  After their January 9, 2004 telephone conversation, Carmine Branagan sent John
Gourlay copies of the *American Craft* magazine. See Exhibit "G", document bate stamped 1204.

     81.  On January 14, 2004, Mr. Gourlay sent an email to Ms. Branagan thanking her for
the magazine and asking to meet. *Id.*   That same day, Ms. Branagan replied by email that she
was interested in meeting the following week. *Id.*; and See Exhibit "K", p. 198-199.

     82.  The following week Carmine Branagan and John Gourlay did meet in person and
they discussed Mr. Gourlay becoming the Publisher of the *American Craft* magazine and what
his compensation would be. See Exhibit "K", p. 199-200; See Exhibit "G", document bate
stamped 1205.

     83.  ACC's January 17, 2004 Executive Committee 10:00am meeting discussed the
various problems with ACC's publishing efforts such as no overall publication plan, no financial
commitment to a plan, and no one is devoted to looking after newsstand sales.  See Exhibit "S",
document bate stamped 1298.  The minutes from this meeting also stated that a plan for the